UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MADELINE FELDMAN,                         :
                              Plaintiff,  :
                                          :          23 Civ. 6169 (LGS)
              -against-                    :
                                          :          **OPINION & ORDER**
MIND MEDICINE, INC.,                       :
                              Defendant.  :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Madeline Feldman brings this employment discrimination action against

Defendant Mind Medicine.  Defendant moves to dismiss eleven of the fifteen causes of action in

the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6).[1]  The eleven challenged causes of action are brought under the Equal Pay Act of 1963

("EPA"), the New York Equal Pay Act ("NYEPA"), the New York State Human Rights Law

("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the Sarbanes-Oxley Act of

2002 ("SOX") and New York common law.  For the reasons below, Defendant's motion is

granted in part and denied in part.

## I.    BACKGROUND

The following facts are taken from the Amended Complaint.  The Amended Complaint's

allegations are assumed to be true for purposes of this motion and are construed in the light most

favorable to Plaintiff as the non-moving party.  *See Hu v. City of New York*, 927 F.3d 81, 88 (2d

Cir. 2019).

### A.  Wage Discrimination Allegations

Plaintiff is a former employee of Defendant.  She first began working for Defendant in

---

[1] Defendant does not move to dismiss the claims brought under Title VII of the Civil Rights Act
of 1964 and the Americans with Disabilities Act.

June 2019 as a consultant before becoming one of Defendant's first full-time employees in April 2020, as Director of Administration & Operations.  She later became Director of Strategy and Operations and then Chief of Staff to Chief Business Officer/Chief Technology Officer ("CBO/CTO") Bradford Cross.  From 2019 to 2022, she helped take the company public, scale the team to about 75 full-time employees and lead the team through several changes in leadership.  During this time, she worked side-by-side with the founders and co-chief executive officers ("CEOs") Jamon A. Rahn and Stephen Hurst to launch the company.

The Amended Complaint alleges that Defendant paid Plaintiff less than her male colleagues with substantially equal jobs and that Defendant systematically gave men more prestigious titles and promotion opportunities than it gave women.  For example, in August 2020, Defendant hired an entry-level male analyst and awarded him more stock options than Defendant awarded Plaintiff.  In addition, when Defendant hired a female director in the operations department ("Female Director 1") in October 2020, CEO Rahn authorized Plaintiff to offer a salary of only $80,000, even though Female Director 1 had more experience than a male coworker who earned $120,000.  Plaintiff questioned whether $80,000 was an appropriate salary for Female Director 1, since Female Director 1 would be working in New York City.  CEO Rahn responded that Defendant did not offer pay differentials for geographic costs of living.  Plaintiff discussed the pay disparity with Chief Operating Officer ("COO") Carol Nast, who confirmed her knowledge of CEO Rahn's "sexist behavior."

In December 2020, CEO Rahn promoted Plaintiff to Level 6 (Senior Director) and two male coworkers ("Male Coworkers 1 and 2") to Level 7 (Vice President), even though Male Coworkers 1 and 2 each had fewer responsibilities than Plaintiff.  At one point, Defendant suggested that Male Coworker 2 report to Plaintiff, even though his title was higher than hers.  By June or July 2021, Defendant re-leveled many of its positions to make its titles, seniority

2

levels and pay rates uniform across the company with the integration of a recently acquired company. Although Plaintiff was re-leveled to Level 5 (Director) and Male Coworkers 1 and 2 were each re-leveled to the lower tier of Level 4, the Male Coworkers kept their previous Level 7 vice president titles, and Defendant consistently paid Plaintiff significantly less than it paid either Male Coworker 1 or Male Coworker 2. For instance, Plaintiff's starting salary was $100,000, while Male Coworker 1 and Male Coworker 2 earned $120,000 and $150,000, respectively. In addition, Defendant granted Plaintiff 120,000 employee stock options, while it granted Male Coworker 1 and Male Coworker 2 300,000 and 450,000 stock options, respectively. In August 2021, Defendant hired a male coworker ("Male Coworker 3") to take over many of Plaintiff's IT responsibilities. Defendant paid Male Coworker 3 significantly more than Plaintiff and gave him a higher equity grant, even though Male Coworker 3 did not have other responsibilities Plaintiff had, such as managing a staff. Throughout Plaintiff's time with the company, Defendant repeatedly promised Plaintiff a raise and increase in equity but never fulfilled its promise.

In December 2021 or January 2022, while Plaintiff was on a medical leave of absence, Defendant terminated the employment of CBO/CTO Cross. When Plaintiff returned to work in February 2022, Defendant had completely changed her job. Defendant assigned Plaintiff to a role that was the opposite of her skillset, having reassigned her staff to other projects and reassigned her previous responsibilities to other co-workers. In February or March 2022, Defendant informed Plaintiff that it was reducing her target bonus for 2021 from 40% of her salary to 30%. While Plaintiff negotiated to keep the 40% bonus for 2021, her new supervisor, Vice President of Global Operations Jakub Klimes, changed her target to 30% for 2022. Defendant did not reduce bonus targets for any male employees or employees who did not oppose Defendant's discriminatory compensation practices. Klimes did not follow Defendant's usual process for Plaintiff's performance evaluation, most troublingly by failing to include the

3

traditional "Growth Plan" for Plaintiff.

### B. SOX Allegations

The Amended Complaint alleges that Plaintiff reported various violations of securities laws and regulations to her supervisors from the spring of 2021 to December 2021. After Defendant failed to disclose to shareholders its March 2021 termination of COO Nast's employment, Plaintiff discussed this omission with CBO/CTO Cross because the company public disclosure policy specifically listed COO as a material position. The company eventually disclosed the separation in May 2021.

From May to December 2021, Plaintiff raised concerns to her supervisor CBO/CTO Cross about Defendant's lack of certain internal controls, including that key employees were not subject to nondisclosure agreements that would prevent them from disclosing or using Defendant's material information. Plaintiff raised the issue with Defendant's executives, counsel and board members, but Defendant repeatedly told Plaintiff that the executive agreements were in progress and would be finished soon.

In June or July 2021, Plaintiff reported her concerns that multiple employees and board members engaged in insider trading by using their knowledge of material and undisclosed information and the pumping of press releases in the days leading up to their sales. Plaintiff reported her concerns to CBO/CTO Cross, who escalated Plaintiff's concerns and requested a third-party investigation, which never occurred. In June 2021, Plaintiff became involved with the company's NASDAQ Readiness Project, whose purpose was to resolve various SOX concerns and replace the heads of the legal and finance departments, who were implicated in insider trading and other securities concerns. Plaintiff and CBO/CTO Cross continuously attempted to raise the securities concerns they uncovered with Defendant's interim CEO, Chief Medical Officer ("CMO") Dan Karlin, external counsel and the Board of Directors, all of whom

4

showed little interest in addressing the issues.  When external auditor Ernst & Young concluded that Defendant's internal controls under SOX were materially weak, Defendant fired Ernst & Young.

On August 18, 2021, Plaintiff learned from CMO Karlin that a May 2021 press release that had been filed with the Securities Exchange Commission ("SEC") as an attachment to a Form 6-K was fraudulent.  The press release had announced a letter of intent with Deepak Chopra.  Plaintiff reported the fraudulent press release to CBO/CTO Cross.  On or about October 16, 2021, Plaintiff and CBO/CTO Cross met with CEO Hurst "to impress upon him the importance of getting the Board of Directors to address the Sarbanes-Oxley compliance issues and the need for appropriate internal controls."  At an unspecified time, Plaintiff also reported a board member's unresolved conflicts of interest and potential conflicts of interest involving Defendant's consultants who also worked for a competitor.

By letter dated October 24, 2022, a group of activist shareholders informed Defendant's Board of Directors that it knew about Defendant's securities violations from its communications with CBO/CTO Cross.  The group complained to the SEC about these violations.  By letter dated November 3, 2022, the group publicly announced a lawsuit against Defendant asserting claims related to its violations of securities laws.

On December 2, 2022, Defendant terminated Plaintiff's employment, ostensibly "due to [Defendant's] decision to align the Business Development and Operations groups with business need."  This corporate realignment ended the employment of two employees: Plaintiff and Male Coworker 2.

On May 30, 2023, Plaintiff filed a complaint with the Occupational Safety and Health Administration ("OSHA") alleging that Defendant had retaliated against her for providing information to her supervisor concerning conduct that she believed violated the securities laws.

## II.    LEGAL STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).[2]  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the grounds upon which their claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019).

## III.    DISCUSSION

For the reasons below, the Amended Complaint states plausible claims of retaliation under SOX, breach of contract and unjust enrichment, but does not state claims for wage discrimination and retaliation under the EPA, defamation and quantum meruit.  Plaintiff does not contest Defendant's argument that the Amended Complaint fails to state claims under the NYEPA, NYSHRL and NYCHRL (Second, part of Third, Ninth, Tenth and Eleventh Causes of

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

Action).  Those claims are dismissed without further discussion in this Opinion.

### A.  EPA

#### 1.  Equal Pay (First Cause of Action)

The Amended Complaint fails to plead wage discrimination under the EPA because it does not allege facts sufficient to show that Plaintiff's job duties were substantially equal to those of a male comparator.  The EPA mandates equal pay "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. § 206(d)(1).  "Thus, to prove a violation of the EPA, a plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions."  *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir. 2014); *see also Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 580-81 (2d Cir. 2020) (summary order) (requiring pleading these elements at motion to dismiss stage).  "Accordingly, at the pleading stage, a plausible EPA claim must include sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job *content* was substantially equal."  *Wu*, 815 F. App'x at 581 (emphasis in original).

The allegations in the Amended Complaint focus on the job levels (i.e., classifications) of the male comparators, which are insufficient to evaluate whether Plaintiff's position required the same "skill, effort, and responsibility" as her comparators' positions.  *See Port Auth. of N.Y. & N.J.*, 768 F.3d at 254-55.  "This focus on job content has been a constant in the context of the EPA.  For example, the EEOC's own regulations provide that 'equal work' under the EPA is established not by reference to 'job classifications or titles but . . . rather [by] actual job requirements and performance.'"  *Id.* at 255 (alteration in original) (citing 29 C.F.R.

§ 1620.13(e)).  For instance, the Amended Complaint alleges that "Plaintiff's role entailed greater skills, effort, and responsibility than those of Male Coworker 1 or Male Coworker 2" but does not specify the tasks performed by Plaintiff, Male Coworker 1 or Male Coworker 2 so that they can be compared.  While the Amended Complaint alleges that Defendant hired Male Coworker 3 to "take over many of Plaintiff's IT responsibilities" and that "Male Coworker 3 was not responsible for managing a staff," the Amended Complaint does not allege whether he had other responsibilities that Plaintiff did not have.  That Male Coworker 3 reported to a vice president while Plaintiff reported to the CBO/CTO does not necessarily mean Plaintiff's work merited higher pay.  "[A] successful EPA claim depends on the comparison of actual job content; broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice."  *Id.* at 256.

Plaintiff's argument that allegations about job classifications alone can support an EPA claim is unsupported by case law, including *Craven v. City of New York*, No. 19 Civ. 1486, 2020 WL 2765694, at *7 (S.D.N.Y. May 28, 2020), which Plaintiff cites.  Unlike here, the complaint in *Craven* alleged specific shared job responsibilities between the plaintiff and her comparator, including that they both "supervised investigators and oversaw investigations of Medicaid and social services fraud" and "attended the same routine meetings."  *Id.* at *3.  The Amended Complaint's EPA wage discrimination claim is dismissed.  *See Wu*, 815 F. App'x at 581 (affirming dismissal of plaintiff's EPA wage discrimination claim because "she has not alleged anything about her actual job duties or the actual job duties of her putative comparators"); *Eng v. City of New York*, 715 F. App'x 49, 52 (2d Cir. 2017) (summary order) (affirming dismissal of plaintiff's EPA wage discrimination claim because she "at no point provides factual allegations about her or the comparators' job duties, skills, efforts, or responsibilities to demonstrate that their respective jobs were substantially equal").

### 2. EPA Retaliation (Third Cause of Action)

The Amended Complaint fails to plead a retaliation claim under the EPA. The anti-retaliation provision of the Fair Labor Standards Act ("FLSA"), of which the EPA is a part, prohibits any person from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3); *see Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 110 n.7 (2d Cir. 2015) ("The EPA amended FLSA and is codified under the same chapter. An employer's retaliation for filing EPA complaints, like retaliation for filing FLSA complaints, is analyzed under section 215(a)(3)."). A "complaint" includes oral complaints, "so long as their complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Greathouse*, 784 F.3d at 117 (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). "[A] plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *accord Robinson v. De Niro*, No. 19 Civ. 9156, 2023 WL 4862772, at *21 (S.D.N.Y. May 25, 2023).

Defendant disputes the Amended Complaint's pleading of both the first (protected activity) and third (causal connection) prongs. It is unclear from the Amended Complaint whether at least one of Plaintiff's oral complaints to her supervisors was "sufficiently clear and detailed for a reasonable employer to understand it" as an assertion of her EPA right. *See Greathouse*, 784 F.3d at 117. For example, the conversation with COO Nast regarding the

9

appropriate salary for Female Director 1 presents a close question.  While it is unclear whether Plaintiff emphasized Female Director 1's gender or geographic location as the basis for the pay disparity in her conversation with COO Nast, COO Nast responded by confirming her knowledge of CEO Rahn's "sexist behavior."  Even assuming the satisfaction of the first prong, the Amended Complaint fails to allege a causal connection between Plaintiff's complaints about unequal pay and the alleged retaliatory acts such as Plaintiff's demotion from Senior Director to Director.  *See id.*  For instance, assuming the conversation with COO Nast occurred around October 2020, Plaintiff was first promoted to Senior Director in December 2020 before being demoted in June or July 2021.  The promotion in between belies a causal connection between the complaint and Plaintiff's demotion.  The Amended Complaint often fails to allege when Plaintiff made the other pay inequity complaints, but even if the last such complaint is construed to have taken place in October 2021, Defendant's reassignment of Plaintiff's job responsibilities did not occur until February 2022 and Plaintiff's employment was not terminated until December 2022. "This court has not defined the outer limits beyond which a temporal relationship ceases to imply causation.  But more than a few months is generally too long without some other evidence of retaliation."  *Wilson v. N.Y. & Presbyterian Hosp.*, No. 21-1971-CV, 2022 WL 17587564, at *2 (2d Cir. Dec. 13, 2022) (summary order).  The Amended Complaint does not outline a relation, whether temporal or otherwise, between any one of Plaintiff's pay equity complaints and a retaliatory act.  Given the Amended Complaint's failure to describe facts supporting either the first or third prongs in sufficient detail, the EPA retaliation claim is dismissed.

### B.  SOX Retaliation (Eighth Cause of Action)

The Amended Complaint adequately pleads a retaliation claim under the whistleblower provision of SOX, 18 U.S.C. § 1514A, that Plaintiff's termination was based on Defendant's alleged belief that Plaintiff had assisted in a complaint to the SEC and a lawsuit against

Defendant relating to its securities violations.  The other retaliatory acts are not actionable because of Plaintiff's failure to exhaust administrative remedies within the required time.

"Section 1514A of Sarbanes-Oxley protects the employees of publicly traded companies who provide information or otherwise assist in an investigation concerning conduct that they reasonably believe constitutes a violation of certain enumerated federal statutes, any rule or regulation of the Securities and Exchange Commission ('SEC'), or any provision of Federal law relating to fraud against shareholders." *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 216 (2d Cir. 2014).  These enumerated statutes describe mail fraud, wire fraud, bank fraud and securities fraud.  *See id.* at 219; 18 U.S.C. § 1514A(a)(1).  The whistleblower provision also protects employees who "file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer)" relating to those statutes, any SEC rule or regulation, "or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(2).  A company may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of" the employee's protected whistleblower activity.  *Id.* § 1514A(a).  To state a claim of retaliation pursuant to § 1514A, a plaintiff must allege that: "(1) he or she engaged in a protected activity; (2) the employer knew that he or she engaged in the protected activity; (3) he or she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action."  *See Nielsen*, 762 F.3d at 219; *accord La Belle v. Barclays Cap. Inc.*, No. 23-448, 2024 WL 878909, at *1 (2d Cir. Mar. 1, 2024) (summary order).

For a federal court to have subject matter jurisdiction over a SOX whistleblower retaliation claim, a plaintiff must first exhaust administrative remedies by filing a complaint with the Secretary of Labor.  *Daly v. Citigroup Inc.*, 939 F.3d 415, 427-28 (2d Cir. 2019).  The Secretary of Labor has delegated the responsibility for adjudicating SOX retaliation claims to

11

OSHA.  *Id.* at 427.  A plaintiff must file an administrative complaint with OSHA within 180 days of becoming aware of the retaliatory act.  18 U.S.C. § 1514A(b)(2)(D).

In this case, Plaintiff filed a complaint with OSHA on May 30, 2023, 179 days after Defendant terminated her employment on December 2, 2022.  Plaintiff's termination is actionable because it was within the 180-day window prior to Plaintiff's OSHA filing.  The other adverse actions described in the Amended Complaint -- Plaintiff's demotion, reassignment of job duties and denial of promotion -- are not actionable because of Plaintiff's failure to exhaust administrative remedies within the required time; these other adverse actions occurred between June 2021 and February 2022, more than 180 days before Plaintiff filed her OSHA complaint.

Contrary to Plaintiff's argument, the continuing violation doctrine does not entitle Plaintiff to challenge the other adverse employment actions.  "Under that doctrine, a court may review a claim involving a mix of timely and time-barred conduct as part of one violative pattern of activity."  *Daly*, 939 F.3d at 428.  However, "[t]he Supreme Court has rejected the continuing violation doctrine in the employment discrimination context when the alleged violation involves discrete acts, rather than an ongoing discriminatory policy."  *See id.* at 428-29 (rejecting application of continuing violation doctrine and finding failure to exhaust administrative remedies where Plaintiff filed her OSHA complaint long after 180-day filing period).  Here as in *Daly*, Defendant's misconduct "as alleged, consists of discrete, discriminatory acts" that "do not amount to an overarching policy of discrimination and are, therefore, insufficient to establish a continuing violation for purposes of deferring her administrative filing deadline."  *See id.*; *see also Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (explaining that the continuing violation doctrine does not apply "to discrete unlawful acts, even where those discrete acts are part of a serial violation"); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (explaining that "acts such as termination, failure to promote, denial of transfer, or refusal to

hire" are easily identifiable discrete acts).  As each of the discrete acts described in the Amended

Complaint "would start the running of the statute of limitations for that act," *see Gonzalez*, 802

F.3d at 222, claims challenging those acts are barred.

Defendant does not dispute the Court's jurisdiction over Plaintiff's SOX claim of

retaliatory termination but argues that the Amended Complaint fails to allege the fourth element

of the claim, that "the protected activity was a contributing factor in the unfavorable action." *See*

*Nielsen*, 762 F.3d at 219.  Defendant's argument is incorrect.  "Causation can be established

either directly through evidence of retaliatory animus or indirectly by demonstrating that the

adverse employment action followed quickly on the heels of the protected activity . . . ."

*Massaro v. N.Y.C. Dep't of Educ.*, No. 21-266-CV, 2022 WL 1788203, at *2 (2d Cir. June 2,

2022) (summary order) (describing causation in the context of an action brought under the Age

Discrimination in Employment Act of 1967).  The Amended Complaint does not allege any

direct evidence of retaliatory animus.  "When the plaintiff relies on temporal proximity alone,

the temporal proximity must be very close [and] is generally insufficient to establish causation

after about three months." *Id*.

Plaintiff first argues that an inference of retaliatory intent can be drawn from Defendant's

(unactionable) adverse actions toward her which began immediately after she started raising

securities compliance issues in 2021, culminating in her termination in 2022.  While Plaintiff

may use these time-barred acts in support of her timely termination claim, *see Nat'l R.R.*

*Passenger Corp.*, 536 U.S. at 113; *Massaro*, 2022 WL 1788203, at *2, they are insufficiently

proximate to show causation.  The Amended Complaint alleges that Plaintiff engaged in repeated

protected activity "from May to December 2021" by reporting various securities violations to her

superiors.  Assuming that Plaintiff's last report was in December 2021, this report occurred too

long before Plaintiff's termination about a year later. *See, e.g., Turnbull v. JPMorgan Chase &*

*Co.*, No. 21 Civ. 3217, 2022 WL 608708, at *5 (S.D.N.Y. Feb. 24, 2022) (almost eight months between start of plaintiff's protected SOX conduct and plaintiff's termination was "too long a delay to permit an inference of retaliation").

However, retaliatory intent can be inferred from events more proximate to Plaintiff's termination than her 2021 reports to her superiors. The Amended Complaint alleges in substance that Defendant believed Plaintiff and CBO/CTO Cross were allied and together informed an activist shareholder group about Defendant's securities violations, resulting in the group's letter to Defendant's Board of Directors in October 2022, and public announcement of a lawsuit on November 3, 2022. These allegations fall squarely within the definition of protected whistleblower activity -- "assist[ing] in a proceeding filed or about to be filed (with any knowledge of the employer)" relating to any SEC rule or regulation. *See* 18 U.S.C. § 1514A(a)(2). The allegations that Defendant learned of Plaintiff's assisting the activist shareholder group during the two months before Defendant terminated Plaintiff are sufficient at this juncture to give rise to an inference that the alleged protected activity was "a contributing factor" to Plaintiff's employment termination. *See Nielsen*, 762 F.3d at 219.

### C. New York Common Law

New York law applies to the state law claims because the parties cite New York cases or federal cases applying New York law, and "such implied consent is sufficient to establish the applicable choice of law." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017).

#### 1. Defamation (Twelfth Cause of Action)

The defamation claim is dismissed because it is barred under New York's statute of limitations. *See* CPLR § 215(3) (requiring "an action to recover damages for . . . libel, slander, false words causing special damages" to "be commenced within one year"). The Amended Complaint alleges Male Coworker 1 published an untrue defamatory statement about Plaintiff to

other individuals in July 2020.  Plaintiff commenced her action in state court in May 2023, long after the one-year statute of limitations for defamation claims.  *See Palatkevich v. Choupak*, 152 F. Supp. 3d 201, 225 (S.D.N.Y. 2016) ("When state claims are removed to federal court pursuant to 28 U.S.C. § 1441, the relevant date for tolling purposes is the filing of the claim in state court.").

### 2.  Breach of Contract (Thirteenth Cause of Action)

The Amended Complaint sufficiently pleads a claim for breach of contract for Defendant's failure to reimburse Plaintiff for business expenses.  "The elements of a cause of action for breach of contract are the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages."  *Noto v. Planck, LLC*, No. 155149/22, 2024 WL 3032702, at *1 (1st Dep't June 18, 2024).  The Amended Complaint alleges the following agreement: "Under the terms of Plaintiff's employment with Defendant MindMed, Plaintiff agreed to expend personal funds for expenses she undertook on behalf of Defendant MindMed.  In exchange, Defendant MindMed agreed to reimburse Plaintiff for the personal funds she expended for expenses she undertook on behalf of Defendant MindMed upon the presentation of receipts to Defendant MindMed."  The Amended Complaint alleges that Plaintiff then used personal funds for business expenses and presented those receipts to Defendant.  However, Defendant never reimbursed Plaintiff, resulting in monetary damages.  Contrary to Defendant's argument, the Amended Complaint does not need to specify further details about the contract formation, terms or damages.

### 3.  Unjust Enrichment (Fourteenth Cause of Action)

The Amended Complaint sufficiently pleads a claim of unjust enrichment in the alternative to the breach of contract claim, based on Defendant's failure to reimburse Plaintiff for her use of personal funds for business purposes.  "[T]he theory of unjust enrichment lies as a

15

quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012). Although Plaintiff cannot recover under both breach of contract and unjust enrichment theories, Plaintiff may plead unjust enrichment in the alternative. *See Farash v. Sykes Datatronics, Inc.*, 452 N.E.2d 1245, 1247 (N.Y. 1983) (stating that "the party who seeks both to enforce the contract that is unenforceable by virtue of the Statute of Frauds and to recover under a contract implied in law will present contradictory characterizations [that] is proper in our courts where pleading alternative theories of relief is accepted"); *Villnave Constr. Servs., Inc. v. Crossgates Mall Gen. Co. Newco, LLC*, 161 N.Y.S.3d 480, 485 (3d Dep't 2022) ("Although a party may not recover under both contract and quasi contract theories, a party may allege such theories alternatively -- even to the point of submitting both to the jury -- and recover under quantum meruit or unjust enrichment if he or she fails to establish the right to recover upon an express contract.").

To plead a claim for unjust enrichment, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co.*, 973 N.E.2d at 746. Here, the Amended Complaint adequately alleges that Defendant was enriched at Plaintiff's expense -- by benefiting from Plaintiff's use of personal funds -- and that equity does not permit Defendant to retain the benefit. Defendant cites no New York law for its argument that the Amended Complaint must plead the amount of benefit as part of an unjust enrichment claim.

### 4. Quantum Meruit (Fifteenth Cause of Action)

The Amended Complaint does not plead a sufficient quantum meruit claim for raises Defendant promised to Plaintiff that never materialized. "To state a cause of action for quantum

16

meruit, plaintiff must allege (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Farina v. Bastianich*, 984 N.Y.S.2d 46, 49 (1st Dep't 2014); *accord Mohawk Constr. & Supply Co., Inc. v. Walsh/Consigli JV*, 203 N.Y.S.3d 148, 151 (2d Dep't 2023). "[R]ecovery under the theory of quantum meruit is unavailable where an express contract covers the same subject matter." *Schutty v. Speiser Krause P.C.*, 928 N.Y.S.2d 4, 6 (1st Dep't 2011); *accord Tycoon Constr. Corp. v. N.Y.C. Hous. Auth.*, 184 N.Y.S.3d 737, 739 (1st Dep't 2023) (affirming dismissal of "plaintiff's cause of action for quantum meruit, as the written contract governs the subject matter in dispute").

Here, an express contract governs the subject matter in dispute: Plaintiff's proper pay. Defendant employed Plaintiff from April 2020 to December 2022, offering her a salary and stock options. The Amended Complaint alleges that Plaintiff's compensation was set by an "employment contract." The quantum meruit claim is therefore dismissed. *See Mucerino v. Firetector, Inc.*, 761 N.Y.S.2d 269, 271 (2d Dep't 2003) (in lawsuit for failure to pay salary increase after termination of employment contract, finding quantum meruit claim "should have been dismissed, on the ground that there was a valid and enforceable contract governing the very subject matter for which the plaintiff seeks to recover"); *Mance v. Mance*, 513 N.Y.S.2d 141, 143 (1st Dep't 1987) (denying plaintiff's motion to amend complaint with quantum meruit claim when "plaintiff received compensation for services he rendered to the company" as well as "fringe benefits such as hospitalization, a car and gasoline, car insurance and maintenance, vacation expenses and other benefits"); *cf. Levion v. Societe Generale*, 822 F. Supp. 2d 390, 405 (S.D.N.Y. 2011) ("[A] plaintiff may not allege that his former employer was unjustly enriched at his expense when the employer compensated the plaintiff by paying him a salary." (New York law)), *aff'd*, 503 F. App'x 62 (2d Cir. 2012).

17

## IV.     LEAVE TO REPLEAD

Plaintiff may, but is not required to, seek leave to replead her wage discrimination and retaliation claims under the EPA.  Plaintiff may not seek leave to replead her defamation or quantum meruit claims because to do so would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given."); *accord Cruz v. SEIU Loc. 32BJ*, No. 19 Civ. 11836, 2021 WL 3604661, at *7 (S.D.N.Y. Aug. 12, 2021).

Should Plaintiff seek to replead, she must do so no later than **August 9, 2024**, by filing a letter not to exceed three pages single-spaced, along with her proposed Second Amended Complaint marked to show changes from the Amended Complaint.  The letter shall explain how the proposed Second Amended Complaint cures the deficiencies identified in this Opinion, including Defendant's argument that Plaintiff's alleged complaints failed to apprise Defendant that Plaintiff was asserting rights under the EPA.  Defendant shall respond, with the same page limitation, by **August 16, 2024**.

## V.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is **GRANTED** in part and **DENIED** in part.

The following claims are dismissed:

- Wage discrimination under the EPA (First Cause of Action);

- Retaliation under the EPA (Third Cause of Action);

- Defamation (Twelfth Cause of Action);

- Quantum meruit (Fifteenth Cause of Action) and

- Claims under the NYEPA, NYSHRL and NYCHRL (Second, Third, Ninth, Tenth and Eleventh Causes of Action), which Plaintiff does not contest.

For clarity, the surviving claims are:

- Gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Fourth and Fifth Causes of Action), which were not subject to Defendant's motion to dismiss;

- Disability discrimination and retaliation under the Americans with Disabilities Act (Sixth and Seventh Causes of Action), which were not subject to Defendant's motion to dismiss;

- Retaliatory termination (but not other adverse acts) in violation of SOX (Eighth Cause of Action);

- Breach of contract (Thirteenth Cause of Action) and

- Unjust enrichment (Fourteenth Cause of Action).

  Plaintiff may seek to replead as set forth above by **August 9, 2024**.

  The Clerk of Court is respectfully directed to close the motion at Dkt. 51.

Dated: July 19, 2024
       New York, New York

                                    **LORNA G. SCHOFIELD**
                                **UNITED STATES DISTRICT JUDGE**

19